FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:18-cr-289-T-17AEP

CHARLES GERARDI

18 U.S.C. § 371
18 U.S.C. § 1516
18 U.S.C. § 1519
18 U.S.C. § 1035

# INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy–18 U.S.C. § 371)

**A.  Introduction**

At times material to this Indictment:

<u>The Medicare Program: Generally</u>

1.  The Medicare Program (Medicare) was a federal health care benefit program providing medical benefits, items, and services (collectively services) to persons who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services (HHS) through its agency, the Centers for Medicare & Medicaid Services (CMS).

2. Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

3. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each beneficiary was given a unique health insurance claim number (HICN).

4. Physicians, clinics, and other health care providers (including licensed clinical psychologists) who provided services that were reimbursed by Medicare were referred to as Medicare "providers."

5. To participate in Medicare, a provider was required to submit an application in which the provider agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for the processing and payment of claims.

6. A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

7. Medicare included coverage under component parts. Part B of Medicare paid for certain costs associated with psychotherapy services.

8. Medicare required that the provider document, on a periodic basis, the beneficiary's capacity to participate and benefit in psychotherapy.

Such documentation included, among other items, a plan of care updated approximately every three months.

9. Medicare further required that the provider maintain medical record documentation that indicated the necessity for each psychotherapy session for each beneficiary. Such medical necessity information had to include: 1) the presence of a psychiatric illness and/or demonstration of emotional or behavioral symptoms sufficient to alter baseline functioning; 2) a detailed summary of the psychotherapy session, including descriptive documentation of therapeutic interventions; 3) the degree of patient participation and interaction with the therapist and the changes or lack of changes in patient symptoms as a result of the session; and 4) the rationale for any departure from the plan of care.

Psychological Services and Billing Procedures

10. For a provider to be paid for psychological services that they performed, Medicare required the submission of claims (sometimes referred to as "billings") which, among other things, set forth each date of service, the service provided, the identity and unique Medicare provider number of the licensed physician or licensed clinical psychologist who performed the service with the beneficiary, and the identity and unique HICN of the beneficiary who received the service.

11. "Psychology" was a specialized field for the diagnosis and treatment of mental health disorders and diseases. "Psychotherapy" was the treatment of mental illness and behavioral disturbances.

12. The American Medical Association (AMA) assigned five-digit numerical codes to medical procedures performed by health care providers. The codes were known as Current Procedural Terminology (CPT) codes. The CPT codes, published annually by the AMA, set forth a systematic listing and coding of procedures and services performed by providers. Medicare established a usual, customary, and reasonable fee for each service rendered, as described by its corresponding CPT code.

13. From at least in or around January 2005 through and including December 31, 2012, Medicare Part B billing under CPT Code 90816 included the provider's time spent face-to-face providing psychotherapy services for 20 to 30 minutes to a patient in an inpatient facility.

14. Effective January 1, 2013, Medicare Part B billing under CPT Code 90832 included the provider's time spent face-to-face providing psychotherapy services for 30 minutes to a patient and/or a patient's family member.

15. From at least in or around January 2005 through and including December 31, 2012, Medicare Part B billing under CPT Code 90818 included the

provider's time spent face-to-face providing psychotherapy services for 45 to 50 minutes to a patient in an inpatient facility.

16. Effective January 1, 2013, Medicare Part B billing under CPT Code 90834 included the provider's time spent face-to-face providing psychotherapy services for 45 minutes to a patient and/or a patient's family member.

17. Medicare Part B billing under CPT Code 90862 included the time spent by a physician or a master's-prepared psychiatric nurse with state-authorized prescribing privileges assessing, monitoring, and prescribing psychopharmacologic medication after a face-to-face encounter with a beneficiary.

The Parties

18. The Counseling Business was a sole proprietorship that contracted with nursing homes to provide counseling and other psychological services to Medicare beneficiary nursing home residents. The Counseling Business applied and became an approved Medicare provider in or around January 1998.

19. The Defendant, CHARLES GERARDI, was a licensed clinical psychologist in the State of Florida and was an independent contractor with the Counseling Business. The defendant did not have state-authorized prescribing privileges.

20. In or around December 2005, CHARLES GERARDI, executed and submitted a Medicare Federal Healthcare Benefit Reassignment Application, assigning his rights to receive payment from Medicare to the Counseling Business.

The Medicare Audit

21. CMS contracted with what were known as Medicare Administrative Contractors to, among other things, receive, adjudicate, and pay claims submitted by Medicare Part B providers. In Florida, CMS contracted with First Coast Services Options, Inc. (First Coast) to perform this role.

22. In addition, First Coast was responsible for identifying and correcting overpayments and underpayments to Medicare providers by performing prepayment medical reviews and/or post-payment medical reviews. First Coast routinely requested beneficiary medical record documentation, including plans of care and psychotherapy notes, from Medicare providers for these audits.

23. On or about April 13, 2012, Defendant CHARLES GERARDI's billings under CPT Code 90816 became subject to prepayment medical audit by First Coast, which required certain medical record documentation to accompany each billing under this code.

### B. The Agreement

24. From an unknown date, but at least by on or about May 13, 2011, through at least on or about February 19, 2014, in the Middle District of Florida and elsewhere, the defendant,

CHARLES GERARDI,

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the grand jury:

>   a. to defraud the United States of money and property by impeding, impairing, obstructing, defeating, and interfering with the lawful governmental functions of HHS, through its agency CMS, and CMS's contractor First Coast, in the administration of Medicare Part B, by deceit, craft, and trickery; and
>
>   b. to commit the following offenses against the United States:
>
>   > i. obstruction of Federal audit, in violation of 18 U.S.C. § 1516;
>   >
>   > ii. destruction, alteration, or falsification of records in Federal investigations, in violation of 18 U.S.C. § 1519; and

      iii. false statements relating to health care matters, in violation of 18 U.S.C. § 1035.

### C.    **Manner and Means**

25.    The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

    a.    It was a part of the conspiracy that, in responding to a Medicare audit records request (resulting in the "audited records"), CHARLES GERARDI would and did falsely and fraudulently claim that many of his individual progress notes for purported psychotherapy sessions with Medicare beneficiaries were destroyed or otherwise unavailable to him.

    b.    It was further a part of the conspiracy that CHARLES GERARDI would and did create a false and fraudulent second set of progress notes that minimized or concealed that CHARLES GERARDI had performed medication management rather than psychotherapy.

    c.    It was further a part of the conspiracy that CHARLES GERARDI and a co-conspirator agreed that CHARLES GERARDI would and did retroactively create plans of care to support fraudulently the medical necessity of psychotherapy services reflected in the audited records.

    d.    It was further a part of the conspiracy that CHARLES GERARDI would and did minimize or conceal the Medicare beneficiaries'

cognitive defects to support fraudulently the medical necessity of psychotherapy services reflected in the audited records.

  e. It was further a part of the conspiracy that CHARLES GERARDI and a co-conspirator agreed that CHARLES GERARDI would and did retroactively create documentation to support fraudulently that CHARLES GERARDI had the appropriate doctors' orders to treat the Medicare beneficiaries identified in the audited records.

  f. It was further a part of the conspiracy that CHARLES GERARDI and a co-conspirator agreed that CHARLES GERARDI would and did fax or otherwise transfer the false and fraudulent audited records to a co-conspirator.

  g. It was further a part of the conspiracy that CHARLES GERARDI and a co-conspirator agreed that the co-conspirator would and did provide false and fraudulent records to the Medicare auditor.

  h. It was further a part of the conspiracy that, to avoid prepayment audit scrutiny of CPT billing codes 90816/90832, CHARLES GERARDI and a co-conspirator agreed that CHARLES GERARDI would and did switch from CPT billing codes 90816/90832 to CPT billing codes 90818/90834.

i. It was further a part of the conspiracy that the conspirators would and did engage in multiple meetings, perform acts, and make statements to promote and achieve the objects of the conspiracy and to hide and conceal the purposes of the conspiracy and the acts committed in furtherance thereof.

### D. Overt Acts

26. In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed by the Defendant CHARLES GERARDI or a co-conspirator in the Middle District of Florida and elsewhere:

a. On or about July 30, 2012, a co-conspirator sent an email to CHARLES GERARDI in which the co-conspirator listed the types of documents CHARLES GERARDI needed to submit to the auditor, and explained to CHARLES GERARDI that CHARLES GERARDI should use "psychobabble" and "key terms" to support the medical necessity of the psychotherapy services reflected in the audited records.

b. On or about August 12, 2012, a co-conspirator sent an email to CHARLES GERARDI in which the co-conspirator explained that CHARLES GERARDI needed to create a series of documents called

Monthly/Quarterly Care Plans to support the medical necessity of the psychotherapy services reflected in the audited records.

    c.    On or about September 3, 2012, CHARLES GERARDI faxed a co-conspirator a sample selection of false and fraudulent audited records for Medicare beneficiary J.W., which included Monthly/Quarterly Care Plans created specifically for the audit.

    d.    On or about September 10, 2012, CHARLES GERARDI submitted and caused to be submitted to the Medicare auditor the following false and fraudulent records and documents, each of which constitutes a separate overt act:

| OVERT ACT | RECORD AND DOCUMENT |
|---|---|
| d.1 | Progress Note relating to Medicare beneficiary R.J., for purported date of service on or about March 11, 2010. |
| d.2 | Progress Note relating to Medicare beneficiary R.K., for purported date of service on or about August 2, 2010. |
| d.3 | Progress Note relating to Medicare beneficiary R.K., for purported date of service on or about August 4, 2010. |
| d.4 | Monthly/Quarterly Care Plan relating to Medicare beneficiary D.H., dated on or about September 2, 2010. |
| d.5 | Monthly/Quarterly Care Plan relating to Medicare beneficiary M.R., dated on or about March 1, 2010. |
| d.6 | Monthly/Quarterly Care Plan relating to Medicare beneficiary E.F., dated on or about June 1, 2010. |

| OVERT ACT | RECORD AND DOCUMENT |
|---|---|
| d.7 | Monthly/Quarterly Care Plan relating to Medicare beneficiary D.L.H., dated on or about January 18, 2011. |

e.  On or about December 18, 2012, a co-conspirator sent CHARLES GERARDI an email in which he told CHARLES GERARDI to "do more [CPT code] 90818's" because CHARLES GERARDI was "not getting audited on [that CPT code]."

f.  On or about the following dates, each of which constitutes a separate overt act, CHARLES GERARDI submitted and caused to be submitted to Medicare claims for services purportedly rendered and eligible to be billed pursuant to CPT codes 90818/90832, in order to circumvent the prepayment medical audit imposed upon CHARLES GERARDI's claims for services billed pursuant to CPT codes 90816/90832:

| OVERT ACT | DATE | BENEFICIARY |
|---|---|---|
| f.1 | February 21, 2013 | B.L. |
| f.2 | March 25, 2013 | G.P. |

All in violation of 18 U.S.C. § 371.

## COUNT TWO
### (Obstruction of Federal Audit–18 U.S.C. § 1516)

1.  The Grand Jury incorporates by reference Part A of Count One of this Indictment as if fully alleged herein.

12

2. From on or about May 13, 2011, through on or about February 19, 2014, in the Middle District of Florida and elsewhere, the defendant,

CHARLES GERARDI,

with the intent to deceive and defraud the United States, endeavored to influence, obstruct, and impede a federal auditor in the performance of official duties relating to the Counseling Business, an entity receiving in excess of $100,000, directly and indirectly, from the United States in a one-year period under a contract, by among other things, furnishing the auditor with fraudulently fabricated documents and records designed to support the Medicare billings that were subject to audit, and billing Medicare for non-rendered services in order to circumvent the prepayment review aspect of the audit.

In violation of 18 U.S.C. §§ 1516 and 2.

### COUNTS THREE THROUGH NINE
### (Falsification of Records–18 U.S.C. § 1519)

1. The Grand Jury incorporates by reference Part A of Count One of this Indictment as if fully alleged herein.

2. On or about September 10, 2012, in the Middle District of Florida and elsewhere, the defendant,

CHARLES GERARDI,

did knowingly alter, falsify, and make a false entry in a record and document

as described below as to each individual count, with the intent to impede, obstruct, and influence the investigation and proper administration of a medical audit by First Coast, a matter within the jurisdiction of a department of the United States, that is, the U.S. Department of Health and Human Services:

| COUNT | RECORD AND DOCUMENT |
|-------|---------------------|
| THREE | Progress Note relating to Medicare beneficiary R.J., for purported date of service on or about March 11, 2010. |
| FOUR  | Progress Note relating to Medicare beneficiary R.K., for purported date of service on or about August 2, 2010. |
| FIVE  | Progress Note relating to Medicare beneficiary R.K., for purported date of service on or about August 4, 2010. |
| SIX   | Monthly/Quarterly Care Plan relating to Medicare beneficiary D.H., dated on or about September 2, 2010. |
| SEVEN | Monthly/Quarterly Care Plan relating to Medicare beneficiary M.R., dated on or about March 1, 2010. |
| EIGHT | Monthly/Quarterly Care Plan relating to Medicare beneficiary E.F., dated on or about June 1, 2010. |
| NINE  | Monthly/Quarterly Care Plan relating to Medicare beneficiary D.L.H., dated on or about January 18, 2011. |

In violation of 18 U.S.C. §§ 1519 and 2.

## COUNT TEN
**(False Statements Relating to Healthcare Matters–18 U.S.C. § 1035)**

1. The Grand Jury incorporates by reference Part A of Count One of this Indictment as if fully alleged herein.

2. On or about February 21, 2013, in the Middle District of Florida and elsewhere, the defendant,

### CHARLES GERARDI,

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and make and use a materially false writing and document, that is, a claim for payment for services purportedly provided to beneficiary B.L. on or about August 1, 2012, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the payment for health care benefits, items, and services involving Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b).

All in violation of 18 U.S.C. §§ 1035 and 2.

## COUNT ELEVEN
**(False Statements Relating to Healthcare Matters–18 U.S.C. § 1035)**

1. The Grand Jury incorporates by reference the Part A of Count One of this Indictment as if fully alleged herein.

2. On or about March 25, 2013, in the Middle District of Florida and elsewhere, the defendant,

CHARLES GERARDI,

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and make and use a materially false writing and document, that is, a claim for payment for services purportedly provided to beneficiary G.P. on or about January 7, 2013, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the payment for health care benefits, items, and services involving Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b).

All in violation of 18 U.S.C. §§ 1035 and 2.

## **FORFEITURE**

1. The allegations contained in Counts One, Ten, and Eleven are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of the violation of 18 U.S.C. §§ 371 and 1035, the defendant, CHARLES GERARDI, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Rachel K. Jones
Assistant United States Attorney

By: _____
Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section

18